My name is Dave Rowland. I'm representing Ms. Katie Gatewood in this matter. The crucial issue in this case is that the Board of Impeachment for the City of O'Fallon was an incompetent tribunal. This is established by any number of federal precedents. The Due Process Clause of the 14th Amendment forbids members of an administrative tribunal not only to prejudge the cases they are called upon to decide, but to give the appearance that they have prejudged the case. Now I recall the Supreme Court of the United States, the case in the City of Hortonville in Wisconsin, where they held that it is not biased, reversing the Supreme Court of Wisconsin for saying that the City Council was biased in ruling in favor of the Supreme Court of Wisconsin. So the proposition you just stated is black letter due process law, I have some familiarity to know it's not crystal clear at all. Well, I'm not familiar with the facts of that case, Your Honor, but the standard that is repeatedly articulated in federal case law is that the question is whether a disinterested observer may conclude that the decision-maker has in some measure adjudged the facts as well as the law of the... But if you talk about inherent bias, financial conflict of interest, any case that doesn't distinguish Hortonville, in my view, is unsound, because the Supreme Court surprised a lot of people by saying no, just because the administrative decision-maker has an obvious financial or other reason to support one side or the other does not violate federal due process. Well, Your Honor, again, I'm not familiar with that case. I don't believe it was cited by either party. No, nobody ever cites it. Perhaps we would have additional briefing on that case. No, because I don't think this issue is significant, because everybody missed the fact that the Middlesex factors were the wrong abstention analysis here. Well, Your Honor, respectfully, this Court has held directly... You probably did. Did you happen to come across a November 2022 decision, 375, Slane Road versus a village somewhere in the Eighth Circuit, following a 2018 case, which said that in Sprint versus Jacobs, the Supreme Court told us all that they really mean it, that Middlesex is the second tier of younger abstention analysis. As far as I can tell, nobody brought that to the district court's attention, and so the entire focus missed the first step, which is to find what's called a NOPCE category of eligibility, and I suspect there's not one here. Well, Your Honor... That means that the whole focus of abstention is by the boards, as the district court finally, I think, came to realize. Your Honor, I disagree, because in Yamaha... Are you familiar with the... I have read that case, yes, Your Honor. What category did this fall into? It falls into the Yamaha Motors versus Riney category, which said that... That was a Middlesex case. It said that where there's an incompetent tribunal... Yes, but you see, you win under NOPCE on abstention, because there is no category. This is not criminal, and I don't think it falls within category two. It certainly doesn't fall within category three, and therefore, the district court's preliminary abstention ruling was in error, led into error by lawyers who didn't cite the current law. So we don't have to get to the incompetent tribunal, which is an alternative defense, so to speak, to abstention. So we, I say, go right to preclusion and exhaustion. Your Honor, those issues have not been briefed. I'm not prepared to argue them today, and respectfully, I think that Riney is the quicker way to resolve the issue. They were decided. I mean, if an appellant doesn't argue the basis of a district court decision, I think we affirm, typically. We certainly don't say, brief it again, and we don't say, district court, do it over and tell them again what to appeal. Respectfully, Your Honor, this court's decision in Riney controls. A competent state tribunal is a necessary predicate to abstention. There is no competent tribunal in this case that's been demonstrated by the record. If there was no abstention order, then the district court would have had to sort out what the Supreme Court in Sprint and NOPCY said you've got to do, the heavy lifting of figuring out when a case is pending in both federal and state court, and the federal court has an unflagging obligation to satisfy its jurisdiction, who's on first? Who goes first? And now the, whether there was a competent tribunal or not, and in particular, whether the competency and bias of the tribunal could be raised as a federal due process issue in state court, becomes highly relevant. Well, Your Honor, that's the way these things are. That's what the Supreme Court is telling us. There's nothing wrong with the same issue, federal issue, being pending in federal and state court. It doesn't matter how important the issue is under state, it can be family law, it can be zoning, it can be all kinds of things that are essential to state government. But if there's a legitimate federal issue, it comes to federal court and it sits there. Well, the two courts figure out, Alphonse and Gaston, you know, who goes first. That's what this is all about, this case. I would welcome a decision that remains to the district court to address the matter on that rationale. But the court did. It said, you know, it said, I don't have to wait for anything. The court abstained and then dismissed on the basis of race genitalia. Even if abstention was appropriate, this is essential to whether you dismiss or stay. Absolutely essential. I mean, I wrote that 25 years ago. Your Honor, I want to reserve some time, but there's no dispute at this level about whether dismissal or stay was appropriate once the abstention order was entered. The question is whether abstention was appropriate. Well, the district court thought there was. But that hasn't been challenged on appeal, Your Honor. No, it didn't have to stay because it decided on the merits. It said race judicata, and race judicata is not available where there is an incompetent state tribunal, a necessary predicate for race judicata or preclusion. Well, isn't the court's, the ultimate decision was that you didn't pursue the remedies you had before the state. Is that correct? There was no decision as far as exhaustion of remedies. We made a decision that we wanted this case decided by federal court. We have a right to have the federal constitutional questions decided by a federal court, particularly when the state tribunal is incompetent. And the district court decided she would abstain from addressing the constitutional questions at that point because we insisted on remaining in federal court. She dismissed the case. And our argument here is that either as a basis for abstention in the first instance or relying on race judicata or preclusion, the fact that the state tribunal was incompetent means that the matter needs to stay in federal district court. And again, the... Well, who said it's incompetent besides, other than your advocacy? The very words, well, we cited a number of federal cases that are very similar. Antonio... You've never read Hortonville. I mean, you know, you threw out some cases, most of them in the circuits. Including two in circuit cases, one of which is very closely on point. Yamaha Motors, Your Honor, is almost directly on point. The district court abstained. The state tribunal made its decision. It wasn't appealed into the state courts. We adjudicated the incompetence. And the record here shows incompetence, Your Honor. If one, if only one. That's your opinion. I mean, that's what trials are for. I wanted to reserve time for rebuttal, but... Counsel will give you one minute for rebuttal. Thank you. Mr. Engelmeyer. Thank you. May it please the court, my name is Tim Engelmeyer. And I represent Bill Hennessey, the mayor of O'Fallon. I will also be speaking for the other O'Fallon entities named in this matter, including council members Hinman, Kuhn, and Kling. The positions and arguments align for purposes of this appeal, so I'll be speaking for all of those defendants in the lower court. For the most part, we stand on our brief. I really don't have much more to add than what we've included in our writing for your review and consideration. I think the comments even by this court kind of pattern what we have put in the brief. I will, however, try to stress a couple... Did anyone cite Minnesota Living Assistance versus Peterson? I don't believe so. So the court was led astray on the abstention issue analysis from the get-go. I don't believe that's in our... No, it's not cited in the briefs on appeal. But that case is four years old, and in this 375 slain, I just said, as we said in the prior case, the Supreme Court taught us in Sprint v. Jacobs that it meant what it said in an op-see. And there's a new abstention sheriff in town, so to speak. And the Supreme Court, in my experience, has done this more than once in abstention analysis. A way of looking at it that the lower courts get comfortable with lasts for 15 or 20 years, and they take a second look at the federalism and all the issues involved, and say, no, we're going to shift horses. And now the pundits all run out and say, oh, my God, what does this mean? And if you play in the abstention pool and don't understand that history, it's very... you can get trapped. I also would like to point out to the court that the abstention order that was entered in this case at the district court level was also lifted. Was also what? Was lifted. If you look at... Well, it was... I think the district court, by the end, understood that the stay v. dismissal aspect of an abstention order that it considered sound under Middlesex, which I think it probably was. It was a different... Events had made that a different question. I think if you look at the court's order, the district court's order, they do lift the abstention. If you look on our... it's document number six in Eppley's appendix. She clearly lifts the stay and decides this case on preclusion doctrine. She decides this case on res judicata and collateral estoppel. This case is... I don't think that was lifting. Well, if you look here, I've got the actual order here. Yeah, I'm looking. It says that the stay is lifted and that further briefing was ordered, or we were ordered to answer the amended petition. So if you look at the decision, Judge Fleisig's decision rests firmly on res judicata and collateral estoppel. I agree, but she recognized initially that normally younger abstention means you dismiss. She did, but there was some... But she never did that, and that was prudent in my view. I think so, because there were issues that remained, such as the issue of damages, that I believe were still lingering out there. Well, the administrative process wasn't done. Right. The administrative process still had to play out. But I believe that if you look at Judge Fleisig's decision, the decision is made on res judicata, preclusion issues, not necessarily the abstention doctrine under... Specifically what precluded the court from... what question was answered and about what decision? Well, I think it was res judicata was the decision that Judge... What was res judicata? Well, in the January 27th order by Judge Fleisig, the district court provides appellant a roadmap on the appropriate way to proceed with a review of constitutional complaints. And she said, Gatewood is free to renew her claim of bias in the state review process, which is the most appropriate form to do so. After that, Gatewood deliberately chose not to take that road. Instead, she let the time deadline lapse for a state review. Once that 30-day time frame lapsed, the matter becomes a final, unappealable judgment. And I think that's where the res judicata comes in. It is a final, unappealable judgment once that 30 days lapsed. I think it was the case that was before you a minute ago where you said that... But it's a state. It's an administrative order. Well, it's an administrative order, but the appeal through the administrative act for the state of Missouri mandates that an appeal from an administrative decision is taken to the court in the circuit in which it sits, the state court in which it sits. So that time came... Had that time frame elapsed? It had. So they didn't appeal it. They did not appeal it. So that's why I think it's tricky whether it's preclusion or exhaustion. Yes. We argued res judicata preclusion prevents them from bringing this to the district court, basically asking the district court to overturn an impeachment decision that was done at the state level in a state administrative proceeding with safeguards in place, by the way, to have this decision reviewed. We can sit here and talk all day about how unfair and how biased everybody was. The issue before this court is where do you take those complaints? Those complaints need to be taken to the state court for determination, not the district court. Judge Fleisig recognized that. Judge Fleisig points it out over and over in her decision that the appropriate place to argue those for... The Supreme Court is communicating that district courts don't have to make that determination. They can because of the application of federal law and the preservation of rights under the federal constitution, enjoin an unfair proceeding when the counsel or the body making that decision is blatantly incompetent. And that's, I think, where Mr. Rowland refers to the case out of Arkansas, the Yamaha case, the Riney case. But I think Judge Fleisig took note of the process that was in place for this impeachment and she followed those elements. Number one, representation by counsel. Everyone was represented by counsel in the underlying case. Number two, the opportunity for discovery. The parties conducted discovery and depositions all allowed under the Administrative Procedure Act. Number three, witness examination. Gatewood's counsel had every opportunity to examine, cross-examine each and every witness at the trial. By consent, video depositions were played at trial. The question wasn't about the evidence that was in front of the decision-maker. It was that the decision-maker itself was compromised based on prior declarations with respect to the determination to be made. And I think Judge Fleisig made a decision at the district court level that that, even looking at the Arkansas case, the Yamaha case, the Riney case, that in that case, you have to analyze whether or not there's a pecuniary or a financial interest in the decision-maker. That's what was evident in the Riney case. There was no such pecuniary interest in this case. Also, the right for a review, a comprehensive review of the impeachment proceedings. Is that available at the state level? It certainly is, in this case, available at the state level. Instead of taking advantage of that review, Gatewood just skips over that entire process, goes directly to the district court for review of this, a state case with important state interests. So I think that's what Judge Fleisig focused on, and I think that's what she made the decision on. But Yamaha only cites younger and middle sex. Yes. And it has a footnote saying it's not clear whether this is a third middle sex factor or whether it is an extraordinary circumstance outside middle sex. Yes. That's where the analysis changes under NOPSI. Right. And under NOPSI, if you don't get to the middle sex factors, you don't apply younger abstention, and you have to go to the merits of the federal case or enter a stay under federal equitable principles while a state proceeding goes further. And I think your brief agrees that that's pretty much what the district court did. I also would like to stress that Judge Fleisig's order, final order dismissing Gatewood's case, I believe it lifts the abstention, it lifts the younger abstention that was entered, and it's decided on preclusion doctrines. And I think those preclusion doctrines really rule. I think an issue that we haven't gone over, if you would give me maybe 30 seconds, if you look at Judge Fleisig's decision, it's based on preclusion doctrines. The points relied on, the argument, everything that's in the brief submitted to this court by Ms. Gatewood focuses on younger abstention, and that abstention was improper in this case. Well, that's not what this case was decided upon, and I think that's very important to note that for an appellate court to try to address error in the court below it, it needs to look at the exact issues why the case was dismissed. And the case wasn't dismissed necessarily on abstention doctrine, it was dismissed on collateral estoppel and res judicata. Thank you, Mr. Inglemeyer. Thank you. Mr. Rola, we'll give you a minute to give your rebuttal. Your Honors, both the decision to abstain from considering the merits of Gatewood's constitutional claims and the decision to dismiss on the basis of res judicata presumed that the State Tribunal was competent. You asked for specific examples for why it's incompetent. We have prejudgment of the issues. Express prejudgment made in public that would allow any reasonable observer to understand that the members of the Board had already drawn conclusions. Mr. Kling said outright she lied. He said that he thought she owed a duty that Mr. Lauber himself said that she did not owe. He tried to recuse himself. The mayor would not let him. Then Mr. Kuhn not only called Ms. Gatewood the worst council member he's ever worked with, he also said it was the biggest no-brainer in the history of no-brainers that she violated the ordinance that they were supposed to be sitting in judgment of in the impeachment hearing. That is a biased statement. Any reasonable observer who heard him say that would understand he had prejudged the very question the impeachment hearing was supposed to be resolving. If even one member was disqualified from that panel, the entire panel was invalidated. The results were invalid under Yamaha v. Riney. Thank you, Your Honors. We ask you to remand this matter and to have the district court address for the first time the constitutional questions of whether the city's action violated Ms. Gatewood's due process rights or her rights under the First Amendment. Thank you. Thank you, Mr. Rowland. We appreciate both counsel's participation and argument this morning. We'll take the case under advisement and continue to study the law and the arguments.